UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:06-00169 |
| | ) | Judge Echols |
| CHRISTOPHER SIMPSON | ) | |

### MEMORANDUM

Pending before the Court is Defendant's Motion to Suppress Evidence (Docket Entry No. 19), to which the Government has responded in opposition. (Docket Entry No. 22). An evidentiary hearing was held on Defendant's motion on February 27, 2007, during which the Court heard testimony from Defendant and Detective William Stokes of the Metropolitan Nashville Police Department. Having reviewed the record, the exhibits, and the testimony of the witnesses, after considering their interests and demeanor, the Court finds the following to be the relevant facts.[1]

### I. FINDINGS OF FACT

On March 18, 2006, at approximately 12:40 p.m., Defendant purchased a 22-ounce Budweiser beer from the A & C Market located at 1441 12th Avenue South in Nashville, Tennessee. After exiting the store, Defendant unscrewed the bottle cap of the beer. Defendant began sipping from the beer bottle which was secreted in a paper sack as he was standing on the sidewalk next to the

---

[1]Because these are the Court's factual findings, any contrary testimony on a specific matter has been rejected in favor of the specific fact found.

1

building talking to two juvenile acquaintances, Deandre Bowling ("Bowling") and Jasmine Jackson ("Jackson").

Drinking an alcoholic beverage in public is in violation of a Nashville ordinance. Additionally, the side wall of A & C Market has a sign which reads "WARNING NO LOITERING NO ALCOHOLIC BEVERAGES CONSUMED OR POSSESSION OF DRUGS ON THESE PREMISES!" The store adjoining the market, Arlinda's House of Beauty, has signs which state "No Trespassing," and "No Loitering." Defendant normally visited the A & C Market twice-daily for the past few years and had seen the signs prohibiting drinking on the premises and loitering and also knew that it was a violation of the law to drink alcoholic beverages in public.

As Defendant was drinking the beer and walking in front of the store, he was observed for several minutes by Detective Stokes[2] who, along with Officer Gonzalez, was patrolling the area of 12th and Wedgewood Avenues in an unmarked vehicle. Although not in standard police uniform, both wore raid jackets which plainly identified them as police officers, and each carried an unconcealed handgun in a holster.

Upon seeing the Defendant drinking the beer, the officers parked their vehicle beside the market and approached the Defendant and his two acquaintances. Another officer, Dunaway, who

---

[2]Detective Stokes is a detective in the West precinct. At the time of the events in question he was with the crime suppression unit in that precinct. Detective Stokes has been a Metro police officer since 1991.

2

apparently had been contacted, pulled in front of the market. After identifying himself as a police officer, Detective Stokes told the Defendant that he was in violation of a Metro ordinance by drinking beer from an open container in public.

Detective Stokes asked Defendant for identification and Defendant provided either a Tennessee driver's license or state identification card. After handing over the identification, Defendant turned slightly to his side at which time Detective Stokes noticed Jackson had her hand under her jacket. Jackson was asked if she had anything on her or in her hand and she removed her hand and showed that it was empty.

At that time, Detective Stokes began to write Defendant a citation for violation of the Metro ordinance and asked Defendant for permission to search his person.[3] Defendant asked "Why?, I haven't done anything wrong." Detective Stokes again replied that Defendant was in violation of the ordinance because he was drinking in public. Defendant was asked again whether he would consent to a search, and Defendant said yes.

As Officer Gonzalez began to search Defendant, a black-handled revolver fell from the front of Defendant's waist band onto the sidewalk. Only two to five minutes had elapsed from the time the officers pulled up in front of the market until the gun fell from Defendant's waistband.

---

[3]Part of the reason that Detective Stokes asked permission to search was because Defendant had turned slightly away after handing the officers his identification.

3

When the gun fell to the sidewalk, Detective Stokes dropped the citation form and immediately "secured" the weapon. Detective Stokes told Officer Gonzalez that Defendant had been armed, and Defendant was handcuffed and the search continued.

Officers found a white rock substance and white powder in Defendant's pockets, both of which field-tested positive for cocaine. Defendant was then placed under arrest and Officer Gonzalez read him read his <u>Miranda</u> rights. When asked, Defendant stated he understood his rights.

An on the scene NCIC check of the weapon revealed that it had been stolen. Defendant stated he had purchased the gun for protection from someone on the street because he had been hassled by someone with whom he previously had an argument. Defendant also stated that the cocaine found in his pockets was for his personal use.

Bowling and Jackson went back into the market, but Officers Gonzalez and Dunaway followed them inside and both voluntarily consented to a search of their persons. The officers found a small amount of crack cocaine on each,[4] and both were taken to a juvenile detention facility.

Defendant was taken to the Criminal Justice Center and charged with trespassing, theft, unlawful possession of a controlled substance and being a felon in possession of a weapon. This was not

---

[4] Jackson also possessed a pill which was inscribed with the words "Watkins 385." The pill was a controlled substance.

4

Defendant's first encounter with law enforcement. Defendant has an extensive criminal record, including approximately fourteen arrests between 1998 and 2005, and several convictions for such things as possession of controlled substances and being a felon in possession of a firearm.

On September 27, 2006, Defendant was indicted by a federal grand jury for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count One). He was also charged with possessing a firearm having previously been convicted of a misdemeanor crime of violence in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2) (Count Two).

## II. **LEGAL ANALYSIS**

In his Motion to Suppress, Defendant seeks to exclude the evidence discovered when he was detained, claiming that the search of his person was illegal. However, during the course of the evidentiary hearing, he orally requested to broaden the Motion to include suppression of the statements that he made at the time of his arrest. Accordingly, the Court will consider both issues.

### A. **Motion to Suppress Evidence**

Defendant seeks to suppress the evidence seized as a result of the search of his person. He contends the search was not voluntary and therefore violated his rights under the Fourth Amendment.

The standards to be utilized in examining the voluntariness of a consent to search has been explained by the Sixth Circuit as follows:

> "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The burden of proving that consent was voluntary is on the government. Id. at 222, 93 S.Ct. 2041. "[C]onsent must be proved by clear and positive testimony, and, to be voluntary it must be unequivocal, specific, and intelligently given, uncontaminated by any duress or coercion." United States v. Scott, 578 F.2d 1186, 1188-89 (6th Cir. 1978). The defendant's knowledge of his right to refuse to consent is a factor, but the government need not prove that the defendant had such knowledge to establish that consent was voluntary. Schneckloth, 412 U.S. at 226-27, 93 S.Ct. 2041.

United States v. Erwin, 155 F.3d 818, 823 (6th Cir. 1998).

In examining the totality of the circumstances, a court should consider the "age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and, the use of coercive or punishing conduct by the police." United States v. Worley, 193 F.3d 380, 386 (6th Cir. 1999). Analysis of the totality of the circumstances in this case leads the Court to conclude that Defendant voluntarily consented to the search.

Defendant is twenty-six years old and, while his educational background is unknown, he understands the English language and was articulate during the evidentiary hearing. He has an extensive criminal record, including convictions for being a felon in possession of a firearm and possession of cocaine. Based on his extensive encounters with law enforcement, there is little doubt he knew about his right to refuse to consent. This is further

6

evidenced by the fact that he initially did not give consent to search.

Further, at the time of the consent, Defendant was not in handcuffs and there was no coercive conduct by the police. Defendant was not physically restrained or even touched prior to the consent, nor was Defendant verbally threatened in any way. The officers did not have their weapons drawn when they approached the Defendant, and the whole encounter until the time consent was given was only a couple of minutes.

While Defendant claims he did not consent to search, the Court does not credit his testimony. If Detective Stokes was making up the story about consent being given, it would be easier to have simply testified that Defendant consented as soon as he was asked, instead of testifying that Defendant initially questioned the propriety of a search since he "had done nothing wrong."

Since this Court credits the testimony of Detective Stokes and rejects the testimony of the Defendant, the Government has shown, by clear and convincing evidence, that Defendant knowingly and voluntarily consented to a search. Accordingly, Defendant's Motion to Suppress Evidence will be denied.

**B.** **Oral Motion to Suppress Statements**

As indicated, after the officers found the gun and narcotics on Defendant, Defendant made statements, including that the gun was purchased off the street for protection, and that the cocaine was

7

for personal use.  Those statements will not be suppressed because Defendant knowingly waived his <u>Miranda</u> rights.

A defendant may voluntarily waive his right to remain silent. A <u>Miranda</u> waiver will be upheld if, under the totality of the circumstances, the waiver was voluntary, knowing and intelligent. When a defendant claims that a statement was involuntary or the result of coercion, the government bears the burden of proving by a preponderance of the evidence that the statement was in fact voluntary.  <u>United States v. Mahan</u>, 190 F.3d 416, 422 (6th Cir. 1999).

A statement is coerced or involuntary if the police activity was coercive, the coercion in question was sufficient to overcome the defendant's will, and the alleged misconduct was a "crucial motivating factor in the defendant's decision to offer the statement." <u>Id</u>.

In this case, there is no evidence that the Defendant was deprived of his ability to exercise free will.  While the Defendant testified that he does not recall ever having been given <u>Miranda</u> warnings, the Court finds as a matter of fact that Officer Gonzalez read <u>Miranda</u> warnings to the Defendant and that the Defendant acknowledged that he understood those warnings.

Further, and as previously observed, there is no evidence that Defendant was coerced in this case.  While Defendant may have had a couple of swallows of beer after exiting the store, there is no evidence Defendant was intoxicated.

8

It is true, as Defendant argued at the suppression hearing, that he was never offered a <u>Miranda</u> waiver form to sign. However, there is no authority for the proposition that a written waiver is necessary to establish a knowing, intelligent and voluntary waiver of <u>Miranda</u> rights. <u>United States v. Miggins</u>, 302 F.3d 384, 397 (6th Cir. 2002).

Simply put, Defendant, after being read his <u>Miranda</u> warnings and stating that he understood them, voluntarily gave unsolicited statements to the police. Since there is no credible evidence that Defendant's will was overborne, or that he was impaired or intoxicated, his oral motion to suppress statements will be denied.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Suppress Evidence (Docket Entry No. 19) will be denied. Defendant's oral Motion to Suppress Statements will also be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

9